---

**TONY TRAN,**
   **Petitioner,**

  **v.**           **Case No. 23-cv-434**

**ROBERT MILLER,**
   **Respondent.**

---

## DECISION AND ORDER

Tony Tran filed a petition for a writ of habeas corpus challenging his incarceration under 28 U.S.C. § 2254. I ordered briefing on one ground for relief: whether Tran's appellate counsel was ineffective under *Strickland* and the Sixth Amendment. For the reasons that follow, the petition is denied.

## I. BACKGROUND

Tran was arrested on August 27, 2015, by Milwaukee police and charged with raping and assaulting two women—A.M. and J.H. At trial, A.M. testified that she was walking home while intoxicated when a man approached her in a black or blue Nissan. She recounted that the man in the car, later identified as Tran, chased her through an alley, brought her back to his car, and assaulted her.

J.H. testified that she was similarly assaulted on the same night. She told the jury that she got into an argument with her boyfriend, Devin Buford, exited his truck, and started walking down the sidewalk. Some time later, a man in a "midnight blue" Chevrolet Impala pulled up to her. The man, later identified as Tran, offered her a ride and she accepted because she needed a way home. She entered his car and sat in the passenger seat.

Tran drove to an alleyway nearby and parked his car next to a green garage. J.H. found this "weird" and tried to exit, but Tran pulled out a box cutter knife and ordered her to remove her pants and underwear. J.H. complied and then Tran climbed on top of her—raping her for nearly ten minutes with the knife at her throat. She testified that it seems as though Tran enjoyed her begging and crying, so she began acting as though she enjoyed the intercourse. After this, Tran stopped, threw her purse into the car's back seat, and told her to "get the fuck out."

J.H. grabbed her pants, but did not recover her underwear, shoes, purse, or the contents of her purse including her cell phone as Tran drove off. She then testified that she ran for help to a nearby gas station and borrowed a phone to call her boyfriend Devin Buford. When Buford arrived, she told him what had happened. J.H. and Buford then drove around to find a nearby police officer.

They found Sergeant Brad Schlei and told him that J.H. had been sexually assaulted and robbed. Schlei was busy tending to a traffic stop involving firearms and could not speak with J.H. or Buford. J.H. pointed out Tran as he drove by, and she called 911 because Schlei was preoccupied. J.H. was taken to the hospital and treated by a sex assault nurse examiner.

Police saturated the area where J.H. claimed the assault occurred and stopped a black Chevrolet Impala with a license plate number similar to what J.H. recalled. The driver, Tran, was detained by Officer Kenneth Justus. Detective Michael Thomae searched the vehicle and found a box cutter, unopened condoms, a wallet containing seven dollars, several cards bearing Tran's name, and three cell phones. He did not find shoes, a purse, brushes, or makeup kits in the car.

2

Officer Justus testified at trial that he stopped Tran's vehicle and removed him from the car. Shortly after, A.M. approached on foot and yelled that the driver had raped her. Officer Justus did not recall finding any weapons, purse, money, brushes, or makeup in Tran's possession.

Tran took the stand and told a very different story. On the night of August 27, 2015, Tran was driving in the south side of Milwaukee looking for a prostitute. He saw a woman, later identified as J.H., who give him a hand signal and approached his vehicle. J.H. sat in the passenger seat and confirmed that she was not law enforcement.

Tran told J.H. he only had twenty dollars. J.H. said that she usually does not accept less than forty dollars but would make an exception this time. Tran then drove to a nearby alley and parked behind a garage. J.H. undressed herself while Tran entered the passenger seat, and they proceeded to have consensual sex.

After they finished, Tran dressed himself and went to pay J.H. She saw he had more than twenty dollars in his wallet and demanded that he pay her more. Tran refused and demanded she exit his vehicle. J.H. then threatened to call a man to their location. Tran noticed J.H. had a phone in her hand and tried to grab it from her. As he did, the phone fell into the car's center console next to a box cutter knife. Tran grabbed the knife, pulled it out, and again ordered J.H. out of his car. He testified that she exited his car without a purse because she never had a purse. He insisted that he did not take anything from J.H., but she left her phone behind as she exited his car.

After J.H. left, Tran states that he parked several blocks away to "clean himself up." While he was cleaning himself, A.M. approached his car and opened the passenger door. Tran grabbed the box cutter again and told her to "get the fuck away from my car."

3

He then testified that A.M. "went crazy" and started screaming at him. He denied ever assaulting A.M. or taking her money. He also stated that A.M. never had a purse and never entered his car.

Earlier, J.H. was cross-examined and confronted with a text message conversation from August 27, 2015, that police found on her phone in Tran's car. A message from J.H.'s phone read: "in a car wit a trick. How much?" to someone named "DB," followed by a response from DB stating: "$40 head dun." Detective David Gabbard testified to the jury that these text messages "were indicative of prostitution activity." He also testified that the neighborhood where the assaults occurred is known for high prostitution activity. When specifically asked, J.H. denied engaging Tran as a prostitute.

Tran's defense counsel argued in closing that the evidence showed J.H. was a prostitute and she had sex with Tran consensually for money. He pointed to the text messages on J.H.'s phone as evidence that she was a prostitute and a liar. Nevertheless, the jury returned verdicts of guilty as to the sexual assault and robbery of J.H., but not guilty as to the sexual assault and robbery of A.M. The court sentenced Tran to 20 years of imprisonment followed by 10 years of extended supervision.

Tran, by counsel, moved for postconviction relief on two grounds: (1) violation of his right to a speedy trial; and (2) plain error during the state's cross examination of Tran at trial. The postconviction court denied his motion. On direct appeal, Tran's appellate counsel abandoned both postconviction grounds and instead raised a different issue: whether the trial court erred in sustaining the state's objection and excluding Officer Justus's answer to the defense's question, "How do you know the name Devin Buford?"

4

At trial, Tran sought to portray J.H. as a prostitute and Devin Buford as her pimp. Officer Justus, who performed the traffic stop and arrested Tran, testified that he had some experience in prostitution investigations. His experience included attending seminars and participating in "four or five" human trafficking cases. On cross-examination, defense counsel asked Justus, "Does the name Devin Buford mean anything to you?" Justice responded that it did. Defense counsel then asked, "How do you know the name Devin Buford?" The state objected, and the court held a sidebar.

Away from the jury, defense counsel told the court that he knows Buford is J.H.'s pimp because he "pays her bills and things like that." The court found that explanation inadequate, saying that counsel's logic would suggest that every breadwinner husband is the "pimp" of his stay-at-home wife. But the court also questioned the witness. Justus explained that he has heard the name Devin Buford come up occasionally in prostitution investigations. He said that he had "heard the name before in those circles . . . but nothing specifically in regards to human trafficking or just like that. He's somebody that's around."

The court probed Justus on how Buford's name comes up in field interviews, and Justus explained that sometimes he "will hear different names of people that the person whom [he is] speaking to believes may be involved in prostitution," but those names could be prostitutes, customers, or pimps. He further explained that this information is sometimes "good quality" but often "just wrong." Justus clarified that had had no information about Buford beyond hearing his name "more than once."

Returning to the state's objection, the court found Justus's testimony that Buford's name comes up in prostitution circles to be "barely relevant, but it is relevant." As the court explained, his testimony tends to support an inference that Buford is a pimp, that

J.H. was his prostitute, and therefore that J.H.'s contact with Tran was consensual prostitution. However, the court then found that the risk of prejudice outweighed the testimony's probative value as it could mislead the jury by shifting their focus from Tran to Buford. The state's objection was sustained and the defense's line of questioning ended.

The court of appeals affirmed the trial court on this issue: "Considering the dubious basis on which defense counsel claimed to know Buford was a pimp and that Justus's 'evidence' was simply hearing Buford's name more than once, the trial court was understandably concerned about the danger of misleading the jury and shifting its focus." *State v. Tran (Tran I)*, No. 2019AP290-CR, 2020 WL 13356413, *unpublished slip op.* (Wis. App. May 19, 2020). Therefore, the trial court's ruling was not "a decision that no reasonable judge could make." *Id.* (citing *State v. Payano*, 2009 WI 86, ¶ 52, 768 N.W.2d 832). Alternatively, the court of appeals found that Buford's testimony was inadmissible hearsay notwithstanding the state's failure to raise it at trial. *Id.* (noting that "a respondent may advance any argument that would allow us to sustain the trial court's ruling," regardless of preservation) (citing *State v. Darcy N.K.*, 218 Wis. 2d 640, 651, 581 N.W.2d 567 (Ct. App. 1998)). Tran petitioned the Wisconsin Supreme Court for review, and his petition was summarily denied.

Tran then filed a petition for a writ of habeas corpus with the Wisconsin Court of Appeals. ECF No. 17-5 (*Knight* petition). He argued that his appellate counsel was ineffective and requested a *Machner* hearing to preserve that counsel's testimony. *See State v. Machner*, 92 Wis.2d 797, 285 N.W.2d 905 (Ct. App. 1979). The court of appeals found that Tran failed to show, or even argue, that his new speedy trial argument was

6

"clearly stronger" than the evidence argument that appellate counsel actually raised. *State of Wisconsin ex rel. Tony Tran v. Randall Hepp (Tran II)*, No. 2022AP2-W, *unpublished slip op. and order* (Wis. App. Sep. 21, 2022) (citing *State v. Romero-Georgana*, 2014 WI 83, ¶¶ 45–46, 849 N.W.2d 668). Tran again petitioned the Wisconsin Supreme Court for review, and his petition was summarily denied.

## II. DISCUSSION

On April 3, 2023, Tran commenced this federal action with a § 2254 habeas petition raising two grounds for relief: (1) denial of his due process right to present a complete defense; and (2) denial of his Sixth Amendment right to a speedy trial. The state responded with a motion to dismiss. ECF No. 9. On June 17, 2024, I concluded that Tran had failed to fairly present both grounds through "one complete round of the state's established appellate review process." *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Tran raised the first ground on appeal, but based on *state* rules of evidence and not due process. He raised the second ground in his postconviction motion, but then abandoned the argument on direct appeal. Therefore, I found both grounds were procedurally defaulted and Tran showed no basis to excuse the default.

In response to the state's motion to dismiss, Tran moved to amend his petition and reframe Ground Two as ineffective assistance of appellate counsel ("IAAC"). I granted Tran's motion, finding that Tran attempted to fairly present this argument in his *Knight* petition but the Wisconsin Court of Appeals overlooked it. *See Johnson v. Williams*, 568 U.S. 289, 303 (2013) ("When the evidence leads very clearly to the conclusion that a

7

federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge.").

I ordered the state to respond to Tran's IAAC argument. The state raises two arguments: (1) Tran's IAAC argument is untimely[1]; and (2) even if it wasn't, his IAAC claim fails on the merits.

## A. Timeliness

To be timely, a § 2254 habeas petition must be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The time during which there is a pending postconviction or collateral proceeding in state court is not counted toward the one-year limit, but a pending federal case does not pause the "clock." § 2244(d)(2).

Tran's judgment of conviction became final on March 9, 2021, when the Supreme Court of the United States denied his petition for a writ of certiorari on direct appeal. The one-year clock was paused when he filed his *Knight* petition on January 3, 2022, with 301 days accrued. The clock began again on February 22, 2023, until January 3, 2024, when Tran filed his motion to amend the petition, accruing another 316 days. So Tran's original petition was timely, but his IAAC claim was filed over 600 untolled days after his conviction became final.

---

[1] Respondent asks that this argument be considered even though both respondent and the court overlooked it when considering futility on Tran's motion to amend. It is not clear to me that a party forfeits a defense against a new claim by failing to raise the defense before the court has even granted permission to plead the claim itself. But even if true, respondent cites to authority showing that I may *sua sponte* consider overlooked arguments, and I choose to do so.

But the Federal Rules of Civil Procedure apply when considering motions to amend the petition. 28 U.S.C. § 2242. When a petitioner amends his petition to add a new ground for relief, the new ground may use the date of the original petition if the new ground "relates back" to the claims in the original petition. Fed. R. Civ. P. 15(c)(1)(B). To relate back, it is not enough for the new claim to involve "the same trial, conviction, or sentence as a timely filed claim." *Mayle v. Felix*, 545 U.S. 644, 662 (2005). The new ground must connect to a "common core of operative facts" with a timely claim. *Id.* at 664.

Under this rule, Tran's new IAAC claim does not relate back. A new legal theory does not relate back if it "differ[s] in both time and type from those in the original pleading set forth." *Id.* at 650. The alleged errors Tran described in his original petition occurred during trial and were made either by the trial court, the prosecutor, or his trial defense counsel. Tran's new claim—that his *appellate* counsel was ineffective—arose after trial, after his postconviction motion was denied, and for errors made by entirely different actors in a different court. For this reason, Tran's petition must be denied.

## B. Merits

As I noted previously, the Wisconsin Court of Appeals correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984) and *Smith v. Robbins*, 528 U.S. 259 (2000)—the basis for *State v. Romero-Georgana*, 2014 WI 83, 849 N.W.2d 668—as controlling for claims of ineffective appellate counsel. However, the Court of Appeals failed to meaningfully consider Tran's claim. Therefore, I must consider Tran's IAAC claim *de novo* because the Court of Appeals has given me nothing to review with deference. Because AEDPA deference does not apply, I apply *Strickland* as elaborated by the Seventh Circuit.

To show ineffective assistance of appellate counsel, Tran must show both deficient performance and actual prejudice. *Strickland*, 466 U.S. at 687. The Sixth Amendment does not require appellate counsel to jam every conceivable nonfrivolous issue into a defendant's brief. *Jones v. Barnes*, 463 U.S. 745, 752–53 (1983). Appellants are bound by strict page and oral argument time limits, and good lawyers will focus their client's limited resources on only the most promising issues. It is still possible to bring a *Strickland* claim against appellant counsel for failing to raise a particular claim, but to show deficiency, Tran must show that a claim counsel should have raised was "both obvious and clearly stronger" than the claim counsel actually raised. *Winfield v. Dorethy*, 956 F.3d 442, 455 (7th Cir. 2020). To show prejudice, the new argument must have had a reasonable probability of succeeding if it was brought.

Here, Tran argues that counsel was deficient because the constitutional speedy trial argument in his postconviction motion was clearly stronger[2] than the state law evidence argument his counsel advanced on direct appeal. In deciding whether Tran's argument was clearly stronger, I must consider the strength of his speedy trial claim *in Wisconsin court*. That is, the controlling United States Supreme Court precedent and any relevant Wisconsin court gloss.

The postconviction court found that Tran's constitutional right to a speedy trial was not violated. ECF No. 1-1 at 1–6. It explained that the period between Tran's August 27, 2015, arrest and his original January 25, 2016, trial date, cannot be held against the state because it represents an ordinary and customary delay between arrest and a felony trial.

---

[2] Without elaborating, I note that the speedy trial argument was "obvious" to Tran's counsel. It was raised in the postconviction motion immediately proceeding Tran's appeal, and Tran discussed the speedy trial issue with appellate counsel. *See* ECF No. 17-5 at 21–23.

10

As for the delay between January 25, 2016, and his trial which commenced on January 18, 2017, that delay was at least partially attributed to Tran rather than the state. The first adjournment from January 25 to March 14 was requested by Tran himself after he obtained new counsel. The adjournment from March 14 to June 22 was by joint request because the state was waiting for DNA lab results and the defense wanted to test the box cutter for blood evidence. The adjournment from June 22 to August 22 was requested by the state due to law enforcement witness unavailability and was granted without objection from Tran. The adjournment from August 22 to January 17 was requested by the state because the two victims J.H. and A.M. did not appear and was granted over Tran's objection.

The postconviction court identified the correct law as described in *Barker v. Wingo*, 407 U.S. 514 (1972), and *State v. Urdahl*, 2005 WI App 191, 704 N.W.2d 324. In evaluating a constitutional speedy trial claim, courts must consider (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. Prejudice may be found where the delay causes (i) oppressive pretrial incarceration; (ii) undue anxiety and concern; and (iii) impairment to the defendant's defense case. *Id.* at 532. The postconviction court found that much of the delay was attributed to Tran himself, either in part or in whole. As to prejudice, the court found that Tran was not prejudiced by his pretrial incarceration because he was serving a different criminal sentence at the time. It noted that Tran gave only "lip service" to the anxiety or concern factor. Finally, it found that any impairment to Tran's defense was minimal. If anything, the court reasoned that the delay likely worked more to Tran's benefit than the state's by making the forgetful victim witnesses appear less credible.

11

The habeas record also includes the impressions of Tran's legal team. Tran's appellate lawyer Parker Mathers wrote that he did not argue the speedy trial issue on appeal because it had "no merit" in light of the circuit court's decision. ECF No. 17-5 at 23. He highlighted that "[t]he delay of the trial was partly due to your request for evidence to be tested." *Id.* Tran's trial lawyer, Frederick Klimetz, said that he did not make a speedy trial demand before trial because Tran simply did not qualify for one. *Id.* at 25. Bluntly, he wrote: "When you are serving a sentence on another case, you are not entitled to a Speedy Trial." *Id.*

Given this record, I cannot say that the speedy trial issue was clearly stronger than the evidence issue or that Tran has shown actual prejudice. The postconviction court correctly described the controlling law and drew reasonable conclusions from the facts as it saw them. The length of delay was longer than twelve months, which Wisconsin courts consider "presumptively prejudicial" and deserving of a closer look. *State v. Ramirez*, 2025 WI 28, ¶ 31, 22 N.W.3d 821 (citing *Urdahl*, 2005 WI App, ¶ 12)). But a 17-month delay by itself "carries little significance beyond triggering the speedy trial analysis." *Id.*, ¶ 32.

Tran conflates two admittedly confusing principles. The cases *Barker* and *Urdahl* hold that a delay becomes "presumptively prejudicial" after one year, triggering further analysis. *Urdahl*, 2005 WI, ¶ 12. But *Doggett* and *Ramirez* ask a different question: At what point does delay alone conclusively establish a speedy trial violation? Generally, this argument becomes possible around year five or six. *Compare Doggett*, 505 U.S. at 657–58 (delay itself compelled a speedy trial violation where six years of an eight-and-a-half year delay were attributable to the government) *with Barker*, 407 U.S. at 534 (no

prejudice after a five-year delay); *Ramirez*, 2025 WI, ¶ 33 (no prejudice after 46 month delay). Tran's 17-month delay comes nowhere close to these extreme cases.

As for the reason for delay, only the period from June 2016 to January 2017 can even arguably be attributed to the state and held against it. And of that, only the delay from August 2016 to January 2017 (caused by the complaining witnesses failing to appear) was granted over Tran's objection. The two earlier adjournments—from January to June 2016—were granted to allow Tran to change trial counsel and to perform testing on physical evidence. Most crucially, none of the adjournments can be considered "deliberate" under the *Barker* framework. *Ramirez*, 2025 WI, ¶¶ 40, 45 (continuance "due to witness unavailability" is either valid or neutral, and carries little weight).

Finally, the postconviction court rightly noted that Tran made a weak showing of prejudice. Respondent notes that Tran was incarcerated pre-trial because he was serving a different criminal sentence. But Tran made an argument on *Barker* prejudice that respondent did not address—that his defense was undermined by delay because it allowed the state's key witnesses to credibly claim forgetfulness when asked about inconsistencies in their testimony. ECF No 20 at 21. This may have some truth to it, but so might the postconviction court's point that his defense was strong enough in spite of the delay to secure acquittal as to the charges involving A.M. Tran's prejudice argument is not empty, but it is largely speculative. Even if this were enough to show prejudice under *Barker*, and it is not, it would not show an even higher level of prejudice needed under *Strickland*. Tran's burden under *Strickland* is to show that his speedy trial argument was *clearly stronger*, not that it might plausibly have any merit at all.

13

Speedy trial is *an* argument, just not a strong one. The state can hardly be faulted for what is (relatively speaking) a typical amount of pre-trial delay, so it is not surprising that both Tran's trial and appellate lawyers declined to argue it. By contrast, the evidence theory his counsel argued on appeal had some merit that Tran overlooks. Tran's entire defense rested on portraying J.H. as a prostitute and Devin Buford as a pimp. J.H. flatly denied engaging Tran as a prostitute, but this was heavily undermined by the text messages on her phone with Buford suggesting prostitution. Any additional evidence of J.H. and Buford's involvement in prostitution could have given the jury reason to discredit J.H. entirely. The jury's acquittal of A.M. suggests that it may have been a close call, so some additional impeachment evidence against J.H. could have given reasonable doubt as to her story.

Comparing the legal argument Tran raised with the argument he claims his counsel should have raised, I cannot conclude that his new argument is clearly stronger. Therefore, he has not shown that his appellate counsel was ineffective under *Strickland* and the Sixth Amendment. For this alternative reason, Tran's petition is denied.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. This case is **DISMISSED**, and the Clerk will enter judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 8th day of June, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge